**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MONTILIOUS BING,

      Petitioner,

v.                                                                      Case No: 8:13-cv-1449-T-36AEP

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

**ORDER**

      Bing, a State of Florida prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1) challenging a conviction for principal to home invasion robbery while armed.  The Court has reviewed the petition, Respondent's response (Dkt. 17), Bing's Reply (Dkt. 19), and the record (Dkt. 18).  Upon consideration, the petition is denied.

**I. BACKGROUND**

      The events that led to the arrest of Bing began when the residence of Ms. Tionetta Edouard and Mr. Donnell Sutton was invaded on March 8, 2006.  Two men were standing in the kitchen while Edouard was alone in the residence (Respondent's Ex. 4, Vol. III, pp. 96-97).  One of the men was carrying a firearm, and Edouard identified that man at trial as Bing (*Id*., Vol. III, p. 99).  The men proceeded to take a safe, old coins, jewelry, money, a gun, and a cell phone.  The men subsequently fled the residence while Sutton was arriving home (*Id*., Vol. III, p. 101-05).  The Manatee County Sheriff's Office subsequently set up a sting operation using Sutton's cell phone to apprehend the suspects as they attempted to collect more money from Sutton.  Two men and one woman were arrested while one man fled (*Id*., Vol. III, p. 139-45).

Edouard initially identified another suspect, Cleveland Davis, Jr., as the man who possessed the firearm inside her home (*Id.*, Vol. III, p. 99-101). From information provided by another suspect, Nicole Bing, Bing (Petitioner) was identified as the suspect who fled the sting operation (*Id.*, Vol. III, p. 211-12). A week before Bing's trial commenced, Edouard was shown a photo-pack that included a photograph of Bing. Edouard identified Bing as the man who possessed the gun inside her residence, rather than Davis (*Id.*, Vol. III, p. 105). On January 11, 2007, Bing was found guilty and sentenced to 25 years in prison (Respondent's Ex. 1, pp. 55-60).

## II. PROCEDURAL HISTORY

Bing appealed his conviction. The appellate court affirmed the conviction without a written opinion. *Bing v. State*, 6 So. 3d 612 (Fla. 2d DCA 2009) [table].

On February 3, 2010, Bing filed a motion for post conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure, raising fourteen grounds of ineffective assistance of counsel. On January 25, 2011, the trial court denied eight grounds, and six grounds were dismissed without prejudice to give Bing the opportunity to allege facially sufficient claims (Respondent's Ex. 7). Bing filed an amended motion. On February 29, 2012, the post conviction court entered a final order denying Bing's amended Rule 3.850 motion (Respondent's Ex. 7). Bing appealed. The appellate court affirmed the denial of the Rule 3.850 motion. *Bing v. State*, 109 So. 3d 791 (Fla. 2d DCA 2012) [table].

Bing filed the instant petition raising five grounds for relief:

1) fundamental error occurred, and Bing was denied due process, when the jury was instructed with "and/or" between the name of a charged victim and a victim not charged in the Information;

2) trial counsel was ineffective in failing to object to or move to suppress Edouard's in-court and out-of-court identification of Bing;

3) trial counsel was ineffective in failing to a) investigate and call two witnesses (Edouard's daughter and Cleveland Davis, Sr.), and b) request a suppression hearing on Edouard's in-court and out-of-court identification of Bing;

4) trial counsel was ineffective in failing to investigate and obtain Edouard's cell phone records that would have impeached Sutton's trial testimony; and

5) in light of newly discovered evidence, Bing is actually innocent of the crime for which he was convicted.

## III. GOVERNING LEGAL PRINCIPLES

Because Bing filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings

of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the

ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]  *Id*. at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90.   "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. Exhaustion of State Court Remedies; Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

direct appeal or in a state post conviction motion. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the

claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or simply by labeling the claim 'federal.'"  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999).  *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions.  *United States v. Frady*, 456 U.S. 152, 167-70 (1982).  The petitioner must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96.  A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.  This exception requires a petitioner's "actual" innocence.  *Johnson v. Alabama*, 256 F.3d

1156, 1171 (11th Cir. 2001).  To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.  *Schlup*, 513 U.S. at 327.

## IV. ANALYSIS

### Ground One

Bing essentially contends that he was denied due process because he was convicted of a crime for which he was not charged.  He asserts that the Information charged him with home invasion robbery by entering the home and taking the property of Edouard, but the jury was instructed that he entered the home and took the property of Edouard and/or Sutton.  He contends that Sutton was not listed in the Information, and in light of the jury instructions, the jury may have convicted him of home invasion robbery by 1) entering Sutton's home and taking Sutton's property, 2) entering Edouard's home and taking Sutton's property, or 3) entering Sutton's home and taking Edouard's property, crimes which, he argues, were not alleged in the Information.

Initially, Respondent argues that to the extent Bing alleges a denial of federal due process, the claim is procedurally defaulted because he failed to fairly present such a claim to the state courts. The Court agrees.

When Bing raised this claim on direct appeal, he framed his argument in terms of state law only, namely fundamental error (Respondent's Ex. 4 - Initial Brief, pp. 14-17).  For a habeas petitioner to fairly present a federal claim to state courts:

> It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made. Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court "such that a reasonable reader would

understand each claim's particular legal basis and specific factual foundation.

*McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005).

Bing framed his claim on direct appeal as fundamental error under state law, rather than federal constitutional law.  He did not fairly present a federal due process violation claim.  Although his Initial Brief made a passing reference to federal due process by quoting a Florida Supreme Court case that cited two federal cases and mentioned due process (*Id.*, p. 14), he presented no argument in support.  Moreover, in his Reply Brief he clarified that he was "challenging as fundamental error the jury instructions which included an additional uncharged victim. . . ." (*Id.* - Reply Brief, p.2). If he wanted to claim that the trial court's jury instructions denied him the due process of law guaranteed by the Fifth and Fourteenth Amendments, he should have said so in his state court brief.[2] Because Bing did not alert the state appellate court that his claim was federal in nature, he did not satisfy the exhaustion requirement of § 2254.

Any future attempt to exhaust state remedies would be futile under Florida law, since Bing may not take a second appeal of his conviction. Therefore, Bing's federal due process claim is procedurally defaulted.  A procedural default may be excused through a showing of cause for the default and prejudice arising therefrom, *see Coleman*, 501 U.S. at 750, or a demonstration that failure to consider the claim will result in a "fundamental miscarriage of justice," *see Murray*, 477 U.S. at 495-96.  Bing has failed to show he is entitled to federal review under either exception to the

---

[2]*See French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270-1271 (11th Cir. 2015) ("federal courts require a petitioner to present his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation. As this Court has observed, a petitioner cannot scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.") (internal citation and quotation marks omitted).

procedural bar.

Moreover, even if this claim were not procedurally defaulted, it would fail on the merits. "Conviction upon a charge not made would be sheer denial of due process." *De Jonge v. Oregon*, 299 U.S. 353, 362 (1937). *See also Stirone v. United States*, 361 U.S. 212, 217 (1960) ("[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him."). Bing has not demonstrated that he was convicted of a crime for which he was not charged.

The Amended Information charged Bing, Davis, and Michael McNeal with principal to home invasion robbery while armed (Respondent's Ex. 1). The Amended Information alleged that on March 8, 2006, the defendants:

> did then and there unlawfully enter a dwelling occupied by TINOETTA EDOUARD with the intent to commit a robbery and did then and there unlawfully, by force, violence, assault or putting in fear, take away from the person or custody of TIONETTA EDOUARD certain property, to-wit: SAFE AND/OR CASH AND/OR HANDGUN AND/OR CELLPHONE, with intent to permanently or temporarily deprive TIONETTA EDOUARD of said property and during the commission of said felony carried, displayed, used, threatened to use, or attempted to use any weapon or firearm, contrary to Section 812.135 and 775.087, Florida Statutes, or aids, abets, counsels, hires, or otherwise procures such offense to be committed in such case made. . . .

(*Id.*).

The trial court instructed the jury with respect to the charge of home invasion robbery as follows:

> Montilious Johnel Bing, the defendant in this case, has been accused of the crime of principal to home invasion robbery while armed.
>
> To prove the crime of home invasion robbery, the State must prove the following three elements beyond a reasonable doubt:
>
> (1) Montilious Johnel Bing entered the dwelling of Tionetta Edouard and/or Donnell Sutton;

10

(2) At the time Montilious Johnel Bing entered the dwelling, he intended to commit a robbery;

(3) While inside the dwelling, Montilious Johnel Bing did commit robbery.

To prove the crime of robbery, the State must prove the following four elements beyond a reasonable doubt:

(1) Montilious Johnel Bing took the money or property described in the charge -- which as I read to you on Monday, was certain property: to wit, safe and/or cash and/or handgun and/or cell phone, from the person or custody of Tionetta Edouard and/or Donnell Sutton;

(2) Force, violence, or assault, or putting in fear was used in the course of the taking;

(3) The property taken was of some value;

(4) The taking was with the intent to permanently deprive Tionetta Edouard and/or Donnell Sutton of his or her right to the property or any benefit from it.

In order for a taking of property to be robbery, it is not necessary that the person robbed be the actual owner of the property.  It is sufficient if the victim has the custody of the property at the time of the offense.

(Respondent's Ex. 4, Vol. IV, pp. 271-72).

The jury found Bing guilty of principal to home invasion robbery while armed, but found that he did not possess a firearm (*Id.*, Vol. I, p. 46).

Bing's contention that he was convicted of a crime for which he was not charged because Sutton was not named in the Information, and the jury may have found that He entered Sutton's home (rather than Edouard's) and/or took Sutton's property (rather than Edouard's), is without merit.  The Information presented a concise statement referring to one specific criminal transaction: the armed robbery of a dwelling "occupied" by Edouard during which Bing and two others took "from the person or custody of" Edouard a "SAFE AND/OR CASH AND/OR HANDGUN AND/OR CELLPHONE" on March 8, 2006  (Respondent's Ex. 1, p. 26).  The evidence revealed

11

that 1) both Edouard and Sutton lived together at the residence that was invaded on March 8, 2006 (Respondent's Ex. 4, Vol. III, pp. 96-97), 2) Edouard was inside the residence during the robbery (*Id*.), and 3) a cell phone that belonged to Edouard, and a safe, jewelry, money, and handgun that belonged to Sutton were taken from the residence (*Id*., p. 100).

Naming Edouard as the person who "occupied" the dwelling and had "custody" of the property provided Bing with notice of the specific criminal transaction in which he was alleged to have taken part. That Sutton lived at the dwelling and had some of his personal property taken does not alter that Edouard also lived in the dwelling, was occupying it at the time of the home invasion, and had custody over both her and Sutton's personal property inside the dwelling at the time of the offense.[3] If, as Bing contends, the jury found that Bing entered Sutton's dwelling and took his property, then, in light of the evidence, the jury necessarily found that 1) Bing entered a dwelling occupied by Edouard, and 2) took property in her custody. Accordingly, Bing was convicted of the same offense and occurrence charged in the Amended Information.

Finally, to the extent Bing contends that "fundamental error occurred when the jury was instructed with 'and/or' between the name of a charged victim and a victim not charged in the information," the contention addresses a matter of state law. *See Joseph v. Sec'y, Dep't of Corr.*, 567 Fed. Appx. 893, 894 (11th Cir. 2014) (unpublished) (finding that Florida habeas petitioner's claim that jury instruction "caused fundamental error" and "tainted the underlying fairness of the entire proceeding," addressed matters of state law). Issues of state law are not cognizable in a

---

[3] *See Rogers v. State*, 783 So. 2d 980, 990 (Fla. 2001) ("Property is taken from 'the person or custody of another' if it is sufficiently under the victim's control so that the victim could have prevented the taking if he or she had not been subjected to the violence or intimidation by the robber."). Because Edouard was Sutton's girlfriend and lived with him at the dwelling Bing and the others invaded, the property inside the dwelling was clearly in her control, and she could have prevented Bing from taking the property but for his violence and intimidation.

federal habeas action.  *See Branan v. Booth*, 861 F.2d 1507 (11th Cir. 1988); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983).  "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).  Therefore, Bing's claim is not a cognizable claim for federal habeas review.

Accordingly, Ground One does not warrant relief.

## Ground Two

Bing contends that trial counsel was ineffective in failing to move to suppress Edouard's testimony that Bing was the man who held the gun during the robbery on the ground that it was "tainted."  Bing argues that the testimony was tainted because Edouard initially identified Davis as the man holding the gun during the robbery, and subsequently identified Bing only after speaking to her daughter and Davis' father.  Bing asserts that those two individuals persuaded Edouard to identify Bing rather than Davis as the man who held the gun during the robbery.

In state court, Bing raised this claim as "Omission One" in his amended Rule 3.850 motion (Respondent's Ex. 5).  In denying the claim, the state post conviction court stated:

> In his first amended claim for relief, the Defendant alleges that his trial counsel was ineffective for failing to object and seek suppression of the home invasion robbery victim's in-court and out-of-court identification of the Defendant "because it was tainted and influenced by others who sought only to aid the defense of the co-defendant Cleveland Davis." In support of this claim, the Defendant alleges that, although the victim identified Cleveland Davis as her assailant within "just two hours after the crime," ten months later she changed her identification to accuse the Defendant because of conversations she had with her daughter and Cleveland Davis, Sr., which "created a doubt in [her] mind concerning her identification of Cleveland Davis." The Defendant further alleges that the victim "changed her mind about the person who invaded her home and admitted she was helping the co-defendant on record." The Defendant argues that his trial counsel's "failure to move to suppress the victim's identification was a failure to subject the prosecution's case to a meaningful adversarial testing process." The Defendant concludes this

13

claim by stating, "Had counsel moved to suppress the out-of-court and in-court identification the court would [sic] granted the motion and the defendant would have bee[n] acquitted at trial."

In order to state a viable claim under this ground, the Defendant must allege facts sufficient to show that his counsel had a valid basis for filing a motion to suppress or objecting to the victim, Tionetta Edouard's testimony and that there is a reasonable probability the motion or objection would have been granted." Here, the Defendant has not established that his trial counsel had a valid basis for filing a motion to suppress or objecting to Edouard's testimony, much less that there is a reasonable probability such a motion or objection would have been granted. Indeed, upon reviewing the trial transcript, the Court finds that even if defense counsel had moved to suppress or objected to Edouard's testimony on the basis of the alleged tainted influence, such a motion or objection would have been denied.

Furthermore, "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." While defense counsel may not have objected to statements made by Edouard, he did skillfully cross-examine her and raised concerns as to her identification of the Defendant and her credibility as a witness. Consequently, the Court finds that the Defendant's trial counsel was not ineffective for failing to make the proposed objection to the victim's testimony in this case, and this claim will be denied.

(Respondent's Ex. 7) (footnotes omitted) (alterations in original).

The state post conviction court found that defense counsel had no valid basis to move to suppress Edouard's identification testimony, and had he moved to suppress, the motion would have been denied. This finding is consistent with the law in Florida that evaluating the credibility of eyewitnesses is generally for the jury to determine. *See Fitzpatrick v. State*, 900 So. 2d 495, 508 (Fla. 2005) (stating that witness credibility and weight of the evidence are solely questions for the jury). The state post conviction court therefore concluded that Bing failed to show deficient performance and prejudice.

The state court has answered the question of what would have happened had defense counsel filed a motion to suppress Edouard's identification testimony on the ground that it was "tainted" or influenced by others - the motion would have been denied. Consequently, Bing has failed to

14

establish deficient performance.[4]  *See e.g., Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).

Moreover, Bing has failed to demonstrate prejudice because he has not shown that, had counsel filed the motion to suppress, the motion would have been successful, and that exclusion of the testimony would have carried a reasonable probability of changing the outcome of the trial.

Bing has not shown that the state courts' denial of this claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.  Accordingly, Ground Two does not warrant relief.

**Ground Three**

Bing complains that trial counsel rendered deficient performance in failing to call two witnesses: Edouard's daughter and Davis' father.  He asserts that counsel should have called them "as witnesses of the court as authorized by Section 90.615(1) and (2), Florida Statutes, to determine what was said to Ms. Edouard to make her change her sworn identification after a ten month period." (Dkt. 1, p. 9).  He contends that 1) Edouard's daughter would have testified that Davis' father is Edouard's cousin, and 2) Davis' father would have testified that he a) is Edouard's cousin, b) showed Edouard photographs of Bing and Davis to demonstrate that they look alike, and c) asked

---

[4]Federal courts "will grant [habeas] relief if. . .a state trial judge's erroneous admission of evidence makes a petitioner's trial 'so fundamentally unfair that the conviction was obtained in violation of the due process clause of the fourteenth amendment[.]'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 n.8 (11th Cir. 2005) (quoting *Thigpen v. Thigpen*, 926 F.2d 1003, 1012 (11th Cir. 1991)).  Bing has not established that the admission of Edouard's identification testimony rendered the trial fundamentally unfair.

Edouard to change her identification of the man who held the gun during the robbery from Davis to Bing.  He argues that these witnesses would have established Edouard had a motive to change her initial identification of Davis as the man holding the gun during the robbery.

In state court, Bing raised this claim as "Omission Two" in his amended Rule 3.850 motion (Respondent's Ex. 5).  In denying the claim, the state post conviction court stated:

> In his second amended claim for relief, the Defendant alleges that his counsel was ineffective for failing to investigate and call Cleveland Davis Sr. and the victim's daughter as witnesses in this case. In support of this claim, the Defendant again alleges that the victim's identification of him as the perpetrator of the crime was improperly influenced by those two individuals. The Defendant argues that "[c]ompetent counsel . . . would have had the victim's daughter and Cleveland's dad call[ed] as witnesses . . . to determine what was said to the victim to make her change her sworn identification after a ten (10) month period."
>
> Notably, most of the proposed testimony of these two witnesses amounts to impermissible hearsay. Moreover, as a general rule, "[a] defendant may not claim his counsel was ineffective for failing to call witnesses when it was the defendant's decision not to call them." In the instant matter, the Defendant was specifically asked by the trial judge whether there were any witnesses he wanted called at trial, he advised the Court that he did not provide his attorney with the name of anyone he wanted called as a defense witness and further advised the Court that it was his decision to call no witnesses. This claim is, therefore, conclusively refuted by the record and will be denied.

(Respondent's Ex. 7) (footnotes omitted) (alterations in original).

First, the state post conviction court correctly indicated that during trial Bing stated that he did not provide counsel with the names of any witnesses that he wanted counsel to call on his behalf, and that it was his decision not to call any witnesses (Respondent's Ex. 4, Vol. III, p. 217). Bing cannot now complain that counsel was ineffective in failing to call witnesses when he did not provide counsel with the names of witnesses he wanted counsel to call, and indicated that he did not want counsel to call witnesses.

Second, "[c]omplaints of uncalled witnesses are not favored, because the presentation of

testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted). Moreover, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, 1996 WL 107279 at *3 (N.D. Cal. March 7, 1996), *affirmed*, 106 F.3d 408 (9th Cir. 1997). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id*.

Bing has failed to present either actual testimony or an affidavit from Edouard's daughter and Davis' father.  Therefore, he only speculates on their proposed testimony and presents no evidence showing that they would have testified as he hypothesizes.

Bing has failed to meet his burden of proving that the state courts unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this claim. *See* 28 U.S.C. § 2254(d)(1), (2).  Accordingly, Ground Three does not warrant federal habeas relief.

**Ground Four**

Bing contends that trial counsel was ineffective in failing to investigate and present evidence, namely, Edouard's cell phone records.  The records, he asserts, could have been used to impeach Sutton's testimony that after the robbery and subsequent sting operation and apprehension of Davis, McNeal, and Nicole Bing, he received a call from Edouard's stolen cell phone during which the caller stated "You know you are fuckin' dead man, because there wasn't nothing but

17

newspaper in the bag." Bing states that he told trial counsel that he never made that call to Sutton,

and suggests the phone records would prove that the call was never made.

In state court, Bing raised this claim as "Omission Three" in his amended Rule 3.850 motion

(Respondent's Ex. 5). In denying the claim, the state post conviction court stated:

> In his third claim for relief, the Defendant alleges that his trial counsel was ineffective for failing to investigate and produce impeachment evidence, namely, the victim's Nextel phone records. In support of this claim, the Defendant points to the testimony of the victim's boyfriend, Donnell Sutton, concerning a threatening phone call he received *after* Defendant's two co-defendants were arrested and complains that "[n]o one witnessed Sutton receiving this call," which the jury was allowed to infer came from the Defendant with the victim's stolen phone. The Defendant alleges that he asked his trial counsel to subpoena the Nextel phone records and produce them at trial to impeach Sutton's testimony that such a threatening phone call was received. The Defendant further alleges that if Sutton's testimony had been impeached with the Nextel phone records, he "would have been found not guilty."

> The Defendant has failed to establish prejudice under this claim. The State's case-in chief included, but was not limited to, the following remarkable evidence against the Defendant:

>> 1. Testimony of Tionetta Edouard identifying the Defendant as one of two individuals who kicked in the dead-bolted front door of her apartment; took a cell phone and a safe, which contained jewelry, old coins, and a gun; and specifically identifying the Defendant as the one who hit her in the head with a gun before leaving.

>> 2. Testimony of Donnell Sutton indicating that on the night of the robbery he saw the Defendant and his two co-defendants, Cleveland Davis and Michael McNeal, looking at him at the bar where he was a manager and again later saw the same three men running away from his apartment which had just been burglarized.

>> 3. Testimony of Deputy Robert Tucker explaining how a male suspect coordinated a purported ransom exchange with Donnell Sutton via the victim's stolen Nextel phone, how law enforcement hastily prepared a sting operation to catch whoever showed up for the ransom money bag, and how three of the four individuals were arrested at the pick-up scene, while another fled on foot.

>> 4. Testimony of Nicole Bing, the Defendant's cousin, who was

treated by the State Attorney as a hostile witness, indicating that she gave the Defendant a ride on the night of the burglary and that the Defendant picked up a bag, which he left in her car when she was stopped by the police and he ran away on foot.

5. Testimony of Detective Debra Kirkland introducing the luggage bag, complete with newspaper inside, that was used for the purported "money drop" in the above-referenced sting operation and retrieved from Nicole Bing's car upon arrest of three of the four suspects in this case.

Regardless of whether a subsequent threatening phone call was made by the Defendant via the victim's stolen Nextel phone, the Court finds that *even if* defense counsel had been able to impeach Sutton on this issue with the proposed Nextel phone records, the jury's verdict was not likely to be any different. Indeed, in light of the evidence enumerated above, the Court's confidence in the outcome of this case is not undermined by the Defendant's allegations under this claim. Therefore, it will also be denied.

(Respondent's Ex. 7) (footnotes omitted) (alterations and emphasis in original).

Initially, Bing has not provided any phone records to support his claim.  Nor has he alleged that he has seen and reviewed the records.  Therefore, his contention that the phone records reveal that no phone call was made from Edouard's cell phone to Sutton is wholly speculative.  Claims based on speculation are insufficient to support a claim of ineffective assistance of counsel.  *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation).

Moreover, the state post conviction court's determination that Bing failed to demonstrate prejudice is not objectively unreasonable.  To show prejudice for this claim, Bing must establish a reasonable probability that he would have been found not guilty had counsel impeached Sutton with the cell phone records.  Bing has failed to do so.

Sutton testified, in pertinent part, that while he was identifying the individuals who were

19

arrested (Davis and McNeal), he received a call from Edouard's stolen cell phone during which the caller stated "you're a fucking dead man, because there wasn't nothing but newspaper in the bag." (Respondent's Ex. 4, Vol. III, pp. 177-78). Even if the cell phone records indicate that a call was not made from Edouard's cell phone during the time Sutton was identifying the suspects, the evidence would have had minimal value. Bing was never identified as the caller. Additionally, the records would not have undermined 1) Edouard's identification of Bing as the man holding the gun during the home invasion robbery, 2) Sutton's identification of Bing as one of the three men he saw at the bar shortly before the robbery and running away from his and Edouard's home immediately after the robbery, and 3) the other evidence placing Bing at the scene of the sting operation (with Davis, McNeal, and Nicole Bing) following the robbery. Accordingly, Bing has not established that, had his counsel attempted to impeach Sutton with the cell phone records, the result of the trial would have been different.

The state courts' denial of this claim was not an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Accordingly, Ground Four does not warrant federal habeas relief.

**Ground Five**

Bing contends that he is actually innocent of the crime for which he was convicted. He asserts that he has newly discovered evidence of his innocence, specifically, a written sworn affidavit from Davis that 1) his father influenced Edouard to change her identification of the man who held the gun during the robbery from Davis to Bing, 2) Bing was not present during the robbery, and 3) he had the gun during the robbery (Dkt. 1-3 - Appendix B).

Bing's claim of actual innocence is not a cognizable claim in federal habeas. *See Herrera*

*v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.").  Accordingly, Bing's "freestanding" claim of actual innocence warrants no relief.[5]

Moreover, even if considered on the merits, the claim must be denied. In state court, Bing raised this claim as "Omission Five" in his amended Rule 3.850 motion (Respondent's Ex. 5).  In denying the claim, the state post conviction court stated:

> Finally, the Defendant once again alleges that the victim's identification of him as "the actual perpetrator" is suspect because he and his co-defendant, Cleveland Davis, "could pass for twins," the victim changed her identification from Davis to the Defendant just five days before the trial, and the victim's identification of the Defendant was tainted by the outside influences of her daughter and Cleveland Davis, Sr. The Defendant further alleges that, subsequent to his trial, co-defendant Cleveland Davis apologized to the Defendant's stepmother "because her son, the defendant, had to come to prison for a crime he (Cleveland Davis) committed." In support of this ground, the Defendant attaches a sworn, notarized statement from Cleveland Davis to his motion and alleges that the information contained therein "could not have been discovered by due diligence by [the Defendant] or his attorney prior to trial" because Davis "'could not' tell the truth at the time of the defendant's trial because he himself was pleading not guilty . . . and he still thought he stood a chance of beating the charges. The Defendant further alleges that he "tried to obtain Davis' testimony prior to trial but Davis refused due to the victims [sic] change in the identification." The Defendant also alleges that his mother is willing to testify about a conversation she had with Davis, but the Court notes that such testimony would be inadmissible hearsay. The Defendant concludes that this purported newly discovered evidence "establishes his actual innocence."

> This claim is without merit. A defendant must meet two requirements to obtain a new trial based on newly discovered evidence.  "First, the evidence must not

---

[5] In federal habeas, a claim of actual innocence "serves as a 'gateway' to get the federal court to consider claims that the federal court would otherwise be barred from hearing."  *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012).

have been known by the trial court, the party, or counsel at the time of trial, *and it must appear that the defendant or defense counsel could not have known of it by the use of diligence*. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial."

While it is true that "evidence can be treated as newly discovered where it is "'based on newly available testimony of defendants who were previously unwilling to testify," even assuming Davis's submitted affidavit is true, it simply states, in pertinent part, that "Montilious was not at the crime when it happened, and I had the gun also." Notably, in rendering its verdict, the jury already specifically found that the Defendant did not possess a firearm. Moreover, the State presented overwhelming evidence during the trial of the Defendant's guilt of "principal to home invasion robbery while armed," as enumerated in Ground Three, *supra*, including "the victim's identification of [the Defendant] from photo lineups with one hundred percent certainty," as well as testimony from other witnesses which linked the Defendant to the crime. Consequently, the Court finds that the Defendant's claim of "actual innocence" under this ground is conclusively refuted by the record. This claim is, therefore, denied.

(Respondent's Ex. 7) (footnotes omitted) (alterations and emphasis in original).

To establish actual innocence, a petitioner must show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The claim must be supported by "new reliable evidence. . .that was not presented at trial." *Id.*, at 324.

Davis' affidavit is not "new reliable evidence" of Bing's innocence. The affidavit is suspect because Davis is Bing's cousin (*see* Respondent's Ex. 4, Vol. III, p. 107), and it was not made until 1) nearly four years after Bing's conviction, and 2) after Davis was convicted and served his sentence.[6] Courts considering similar affidavits have rejected them as insufficient to support a claim of actual innocence. *See Arthur v. Allen*, 452 F.3d 1234, 1246 (11th Cir. 2006), *cert. denied*, 549 U.S. 1338 (2007) (11th-hour exculpatory affidavits are suspect); *Drew v. Scott*, 28 F.3d 460, 463

---

[6]Davis entered a plea of no contest on March 2, 2007, to the charge of principal to home invasion robbery while armed. He was sentenced to four years imprisonment and was released in 2010 (Respondent's Ex. 9).

(5th Cir. 1994) ("we still have little confidence in Puralewski's postsentencing truth experience because he had nothing whatsoever to lose by incriminating himself after receiving a 60-year sentence."); *Bosley v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005) (rejecting actual innocence claim where new evidence consisted only of testimony from four relatives of the petitioner); *Mize v. Hall*, 532 F.3d 1184, 1197 (11th Cir. 2008) ("affidavits alone are not a promising way to demonstrate actual innocence. Though sworn, they are not convincing evidence of innocence because 'the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations.'") (quoting *Herrera*, 506 U.S. at 417).

Moreover, Bing has not established that it is more likely than not that no reasonable juror would have convicted him in light of Davis' statements. The state post conviction court found that there was overwhelming evidence of Bing's guilt, including Edouard's identification of Bing, Sutton's testimony that he saw Bing with Davis and McNeal at the bar the night before the robbery, and saw them running from his home after the robbery in the early morning the next day, and the circumstantial evidence placing Bing with Davis, McNeal, and Nicole Bing at the scene of the subsequent sting operation prepared to catch the individuals who invaded and robbed Edouard and Sutton's home.[7] Although Davis' testimony may have caused doubt in the minds of the jury, it does not establish that it is more likely than not that no reasonable juror would choose to believe Davis' account over those accounts offered by Edouard and Sutton.

Bing has not shown that the state court's adjudication of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. Therefore, Ground Five does not warrant relief.

---

[7]*See* Respondent's Ex. 4, Vol. III, pp. 140-45; 164-70; 199-212.

Any claims not specifically addressed herein have been determined to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The **Clerk** shall enter judgment against Bing, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is further **ORDERED** that Bing is not entitled to a certificate of appealability (COA). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a COA. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Bing "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Bing cannot make this showing. Finally, because Bing is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on September 26, 2016.

Charlene Edwards Honeywell
United States District Judge